UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTEN ZINSELMEIER, *Individually and on behalf of WILLIAM ZINSELMEIER, deceased* | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25 CV 1893 RWS |
| | ) | |
| | ) | |
| Jefferson County, Missouri, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before me on Defendant Jefferson County, Missouri's ("the County's") Motion to Dismiss [8] and Defendant Roland Kirchoff's ("Officer Kirchoff") Motion to Dismiss [10].  On January 6, 2023, William Zinselmeier was an inmate at Jefferson County Jail when he allegedly died in his cell.  On December 31, 2025, his daughter, Kristen Zinselmeier, filed a Complaint against Defendants Jefferson County, Missouri, VitalCore Health Strategies, LLC ("VitalCore"), Sheriff David L. Marshak, Dr. Danny Stanton, the nurses and correctional officers allegedly involved in the incident.  Ms. Zinselmeier asserts claims for constitutional violations, wrongful death, violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, and violation of Section 504 of the

1

Rehabilitation Act, 29 U.S.C. § 794.  For the reasons set forth below, I will grant in part and deny in part the County's motion, and I will deny Correctional Officer Kirchoff's motion.

## Background

Taken as true for the purpose of ruling on Defendants' motions, Ms. Zinselmeier's Complaint alleges the following facts.

William Zinselmeier was 57 years old when he was detained at the Jefferson County Jail in March 2022.  He suffered from diabetes and hypertension.  At his intake medical assessment, Mr. Zinselmeier informed jail staff that he was prescribed daily medications to manage diabetes and hypertension.  He did not receive these prescription medications in the days leading up to his death. Beginning in mid-December 2022, Mr. Zinselmeier became increasingly ill.  He experienced symptoms including, but not limited to, severe nausea, vomiting, and weakness.  He was unable to eat, drink, or walk.  Because he was not able to walk, he was not able to retrieve his medications.  He had not eaten for more than four days.

On January 5, 2023, Mr. Zinselmeier filed a written sick call request that he "ha[d] not eaten in 4 days." (ECF. No. 1 at ¶ 33.)  Defendant Brenda Short, a jail administrator, received and read the sick call request.  All of the individual defendants and John Doe defendants were aware that Mr. Zinselmeier was

2

experiencing the aforementioned symptoms. Despite being aware of his symptoms, Defendant jail nurses did not order or ensure that his vitals were taken or recorded, including his blood pressure and blood glucose levels. Nor did the jail nurses follow-up and ensure he was receiving his medications. As Mr. Zinselmeier's condition worsened, several other detainees at the jail informed Defendant correctional Officer Kirchoff that Zinselmeier had not been receiving his hypertension and diabetes medications. Every day for at least the three days before his death, other detainees reported to Officer Kirchoff that Mr. Zinselmeier was too sick to get up and walk to the medication cart. Officer Kirchoff responded, "if [Zinselmeier] wants his meds, he can get up and come get it." (*Id.* at ¶ 40.)

Additionally, Defendant nurses and correctional officers were aware that bedridden detainees, including Mr. Zinselmeier, could not retrieve their medications, yet they continued to record that these detainees had "refused" to take their medication. Medication was not being administered to detainees who were bedridden. Mr. Zinselmeier was recorded as having "refused" his medication, and no attempts were made to administer his medication at his bedside. Short knew about the practice of recording bedridden and ill patients as having "refused" their medication, and that such "refusals" were recorded without the proper refusal forms, progress reports, incident reports, or any other documentation. On January

3

6, 2023, Zinselmeier told multiple other detainees that he "felt like he was dying," and he complained to correctional officer Brian Voyles about his illness.  (Id. at ¶ 66.)  Officer Voyles then contacted Defendant Nurse Chelsea Griffon, who told Officer Voyles that she would not check on Mr. Zinselmeier and instead Defendant Nurse Megan Johansson would be in his housing unit in the evening.  Mr. Zinselmeier was on the list to see the jail's Nurse Practitioner, Defendant Keely Dayton, on that Friday, January 6th.  However, Dayton "disregarded her scheduled visit with Zinselmeier, knowing of [his] serious medical need."  (Id. at ¶ 122.)

Later that day, at approximately 8:30pm, Mr. Zinselmeier fell out of his bed, making an audible thump noise that was heard by other inmates. Mr. Zinselmeier's fellow detainees saw that he was unresponsive and helped put him back into his bed.  These inmates informed correctional officers, including Officer Kirchoff, that Mr. Zinselmeier was unresponsive and required immediate medical assistance. Officer Kirchoff and the other correctional officer and jail nurse defendants failed to check on Mr. Zinselmeier, call 911, or ensure he received medical care.  At approximately 9:45pm on the same night, Nurse Johansson and Officer Shoults arrived at Mr. Zinselmeier's housing unit with the medication cart.  Despite being informed by other detainees of Mr. Zinselmeier's unresponsiveness, Nurse Johansson failed to provide medical assistance or check on him, and she recorded him as having "refused" his medication.  There is no medication "refusal" form

4

signed by Mr. Zinselmeier or any witnesses to his alleged "refusal." Several hours later, at approximately 3:40am, Mr. Zinselmeier's cellmate saw that he was not breathing and pressed the emergency call button. Shortly thereafter, EMS arrived and found Mr. Zinselmeier in asystole.[1] He was pronounced dead on the scene. An autopsy was conducted by the Office of Dr. Mary E. Case, Chief Medical Examiner, which showed that Mr. Zinselmeier's cause of death was hypertensive cardiovascular disease with diabetes mellitus noted as a significant contributing factor.

Ms. Zinselmeier's Complaint also details various witness statements taken during an investigation by Jefferson County Sheriff's Department Investigators.[2] Witnesses allegedly included fellow detainees, defendants in this case, and Mr. Zinselmeier's cellmate. Additionally, Ms. Zinselmeier alleges that the investigators reviewed jail surveillance audio and video footage that showed no nurses entered Mr. Zinselmeier's cell on the night of his death. The video allegedly also shows the moment when Mr. Zinselmeier fell out of his bed and at least four other inmates immediately went to check on him. The Complaint alleges that one of the inmates is seen on video walking to the "call box" intercom system to notify corrections officers.[3] Nurse Johansson stated in her interview with the

---

[1] Asystole occurs when the heart stops beating (also known as "flat-lining").

[2] The Complaint does not report the results of the investigation. In ruling on the instant motions to dismiss, I treat the alleged witness testimony as factual allegations made in the Complaint.

[3] Ms. Zinselmeier believes these officers to be John Does 7-9.

County's investigators that "it was the regular practice in the Jefferson County Jail" for jail medical providers to "record a medical 'refusal' if a sick detainee could not get out of bed, leave their cell, or walk to the medication cart."  (*Id.* at ¶¶ 81-84.)  Officer Shoults also "informed investigators that the practice of the jail medical staff is if a detainee is sick and doesn't 'get up' and get their medication, that is logged as a 'refusal.' "  (*Id.* at ¶ 155.)

Ms. Zinselmeier's Complaint brings several claims against Defendant VitalCore.  She alleges that VitalCore was contracted by Jefferson County to provide medical services and employed Defendant jail nurses and Mr. Zinselmeier's jail physician, Defendant Dr. Danny Stanton.  She also alleges Dr. Stanton failed to monitor Mr. Zinselmeier's blood pressure and blood sugar and failed to ensure that he received his medications as prescribed.  In addition to the Defendants sued in their individual capacities, the Complaint contains allegations against Defendants "acting within the scope and course of employment for their employer(s)."  The Complaint also contains numerous allegations based on various theories of liability against individuals in their supervisory capacity and against Defendants Jefferson County, VitalCore, and Sheriff David L. Marshak.

### Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  In ruling on such a motion, I must accept all factual

allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). But I may not "presume the truth of legal conclusions couched as factual allegations." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although I also must generally ignore materials outside the pleadings, I may consider "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the plaintiff pleads sufficient facts to allow me to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires a complaint to contain enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A threadbare recital of the elements of a cause of action, supported merely by conclusory allegations, is not sufficient. *Iqbal*, 556 U.S. at 678.

**Discussion**

7

As an initial matter, Ms. Zinselmeier's Complaint contains numerous allegations made "upon information and belief."  She asserts that the evidence supporting these allegations is "within the sole possession and control of the defendant," or the allegations are "based on sufficient factual material (i.e., limited records produced pursuant to HIPAA and Sunshine requests) which makes the inferences plausible."  ECF. No. 1 at 13 n.1.  The Eighth Circuit held that "allegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegations is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible."  *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023).  Allegations made upon information and belief, however, "cannot cure an otherwise threadbare complaint."  *Id.* at 955.  In ruling on the instant motions, I consider whether the allegations Ms. Zinselmeier pleads upon information and belief are supported by at least "*some factual basis for the inference of liability* or the *reasonable belief* that the information supporting such liability is in the sole possession of the defendant."  *Id.* (emphasis added).

*Claims against Jefferson County (Counts II, III, IV, V, & VI)*

   a.  *Failure to train, supervise, or discipline employees (Count II)*

Count II of Ms. Zinselmeier's Complaint brings a § 1983 claim against the County for failure to train, supervise, or discipline its employees ("Monell/Canton Liability").[4]  Count II will be dismissed because Ms. Zinselmeier fails to sufficiently allege that the County was on notice that its training policies and procedures were inadequate and likely to result in the violation of Mr. Zinselmeier's constitutional rights.

Generally, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a respondeat superior theory of liability." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (internal quotation omitted).  A local government may be liable under § 1983 for failure to train, supervise, or discipline its employees where "(1) the [county's] ... training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the county]'; and (3) an alleged deficiency in the ... training procedures actually caused the plaintiff's injury." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).  A plaintiff's ability to demonstrate that particular officers were unsatisfactorily trained does not, by itself, establish liability on a local government under § 1983.  *Id.*  Rather, a plaintiff must show:

> that in light of the duties assigned to specific officers ... the need for more or different training is so obvious, and the inadequacy so likely to result in the

---

[4] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 998. "In other words, [a plaintiff] must demonstrate that the [county] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Id.* (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir.1996)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Here, I find that Ms. Zinselmeier provides only the bare assertion that the *County was on notice* that that its training and supervision were inadequate. She alleges:

> 194. Jefferson County defendants were on notice of the obvious need to train the individual defendant guards and were on notice of the inadequate customs, practices, and failures of their guards to ensure detainees received their prescription medication and treatment, ensure detainees concerns were referred to medical, and ensured that medical referrals and emergencies were responded to.

> 196. More specifically, the above named defendants failed to ensure that subordinates were trained, supervised, and disciplined when necessary to ensure ***a) provided detainees their prescribed medications, b) that their subordinates visited detainees that were too sick to walk, bedridden, or otherwise could not leave their cell to walk to see the nurse, including to provide medication to inmates who couldn't walk to the nurse, c) monitored ill detainees or detainees with serious medical needs d)***

> *contacted jail or outside physicians related to detainee's serious medical needs, e) properly documented medical events, vital signs as ordered, and medication delivery, f) closely monitored and treated Mr. Zinselmeier's two ADA-recognized disabilities of hypertension and diabetes, g) emergency medical needs were adequately addressed.*

ECF. No. 1 at ¶¶ 194, 196 (emphasis in original).  Although Ms. Zinselmeier identifies a number of particular training deficiencies in her Complaint, she offers only the conclusory statement that the County was "on notice" of such deficiencies and failed to ensure that there was proper supervision and discipline when necessary.  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for the purposes of failure to train." *Connick*, 563 U.S. at 62.  The lack of allegations supporting Ms. Zinselmeier's claim that the County was on notice of its inadequate training and failure to supervise and discipline correctional staff is fatal to her claim.

Ms. Zinselmeier argues in her Response to the County's motion that her Complaint alleges the County had written policies and procedures in place regarding the provision of medical care to detainees that correctional staff failed to follow.  ECF. No. 19 at 7.  But the County having these procedures alone does not demonstrate the County was *on notice* of deficient training or the failure to supervise correctional staff in following those procedures.  She also cites the Eighth Circuit's decisions in *Mitchell v. Saint Louis Cnty., Missouri*, 160 F.4th 950 (8th Cir. 2025), and *Troupe v. Young*, 143 F.4th 955 (8th Cir. 2025), in her

11

Response.  ECF. No. 19 at 6-7.  In *Mitchell* and *Troupe*, the Eighth Circuit found that the plaintiffs had provided sufficient factual allegations to state a claim against St. Louis County for failure to train, supervise, or discipline correctional staff.

However, the court in *Mitchell* determined that St. Louis County was on notice of training deficiencies because the plaintiff plausibly alleged that the county's "practices previously led to another detainee's death and that there was intense media and political scrutiny of the jail's medical operations."  160 F. 4th at 963.  Similarly, the court in *Troupe* noted that the plaintiff alleged the codirector of the County's Department of Public Health was aware of the " 'need to take remedial action' regarding previous jail deaths because it had been discussed by recent media reports, the St. Louis City Council, and internal reports."  143 F. 4th at 962.  Based on these allegations, the court held that the plaintiff sufficiently stated a failure to train, supervise, or discipline claim against St. Louis County.  *Id.* at 975 ("Troupe alleged the policymakers in question were aware of this [unlawful] practice and deliberately disregarded this failure to check the health of inmates.").  Ms. Zinselmeier makes no allegations that, for example, policymakers in the County were on notice of previous jail deaths caused by the alleged failure to train, supervise, or discipline correctional staff or of media reports criticizing the County jail's medical practices.  Without more, I cannot assume that the County was on

notice of any of the alleged deficiencies regarding training, supervising, or disciplining correctional staff in their provision of medical care to detainees.

Because Ms. Zinselmeier fails to sufficiently plead that the County was on notice of the alleged failure to train, supervise, or discipline its employees at the Jefferson County Jail, Count II of her Complaint will be dismissed.

### b. *Unconstitutional policy, custom, or practice (Count III)*

Count III of Ms. Zinselmeier's Complaint brings a § 1983 claim against Jefferson County for maintaining an unconstitutional policy, custom, or practice ("Monell Liability").  Ms. Zinselmeier alleges that the County maintained the unconstitutional policy, custom, or practice of recording that bedridden detainees had "refused" to take their medication.  ECF. No. 1 at ¶¶  42, 82.  She further alleges that it was the regular practice of jail medical staff to "not administer[] prescribed medications to detainees who were too sick to walk to the medication cart."  *Id.* at ¶ 146.  I find that Ms. Zinselmeier provides sufficient allegations to state a § 1983 claim against the County for maintaining an unconstitutional policy, practice, or custom.

A plaintiff may establish municipal liability for a constitutional violation "if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise."  *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (internal citations omitted).

13

"Policy and custom are not the same thing." *Id.* at 699-700. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* at 700 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)) (internal quotations omitted). To establish municipal liability for an unofficial custom, a plaintiff must demonstrate: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

The County contends that Ms. Zinselmeier fails to specify any additional incidents of correctional staff recording it as a "refusal" when bedridden detainees are too ill to walk to the retrieve their medication. ECF. No. 9 at 7. The County also argues that the Complaint only alleges constitutional violations that occurred on the day of Mr. Zinselmeier's death. An isolated incident is generally insufficient to establish municipal liability under § 1983. *See, e.g.*, *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) ("[A] single deviation from a written, official policy does not prove a conflicting custom.")

14

(internal quotation omitted*); Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("A single incident normally does not suffice to prove the existence of a municipal custom."). "The pattern of unconstitutional conduct must be so pervasive and so widespread so 'as to have the effect of the force of law.'" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996)). However, the Eighth Circuit "has not determined whether some other minimum number of incidents is required as evidence of custom." *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 841 (D. Minn. 2021) (citing *Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595, 620 (E.D. Mo. 2019)).

At the pleading stage, "all that is required is a 'possible custom.' " *Id.* at 844. " 'When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of the constitutional right.' " *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir.2003)). "Dismissal is proper when a complaint does not contain any allegations, reference, or language *by which one could begin to draw an inference* that the conduct complained of … resulted from an unconstitutional policy or custom." *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 954 (8th Cir. 2024) (internal quotations omitted)

15

(emphasis added).  Although Ms. Zinselmeier does not identify other specific incidents of the alleged practice resulting in violations of detainees' constitutional rights, I find that she pleads sufficient factual allegations to "raise the right to relief above the speculative level." *Id.* at 851 (citing *Twombly*, 550 U.S. at 555).

Specifically, she alleges that Defendant Officer Shoults "informed [Jefferson County] investigators that the *practice* of the jail and medical staff is if the detainee is sick and doesn't 'get up' and get their medication, that is logged as a 'refusal.' " ECF. No. 1 at ¶ 155 (emphasis added).  In addition to Officer Shoults, she alleges that Defendant Nurse Johansson also told investigators that it was the practice of jail medical providers to "record a 'refusal' if the detainee cannot or does not walk from his cell to his pod door for his prescription medication." *Id.* at ¶ 158.  She further alleges that Nurse Johansson stated that recording such refusals "was the regular *practice* in Jefferson County Jail." *Id.* at ¶ 84 (emphasis added). Ms. Zinselmeier alleges that "Jefferson County jail policy and the national correctional standards require a refusal of medication form to be signed by the patient and a witness, or by two witnesses," and "no refusal form was signed by Zinselmeier" nor any witness(es). *Id.* at ¶¶ 85, 86.  She also alleges that when Mr. Zinselmeier became too sick to get out of his bed, a witness informed Defendant Officer Kirchoff, who then told the witness that "if he [Zinselmeier] wants his meds, he can get up and come get it," and that no medication was administered at

16

Zinselmeier's bedside. *Id.* at ¶¶ 40, 87. Ms. Zinselmeier alleges correctional staff "record[ed] him as a 'refusal' when he was too ill to walk to pill call." *Id.* at ¶ 234, 237.

Taken together, these factual allegations are more than mere conclusory statements. Ms. Zinselmeier provides the alleged admissions of a jail guard and nurse that it was the regular *practice* among correctional staff to record "refusals" rather than administer medication at detainees' bedsides. As a result, I find that Ms. Zinselmeier's Complaint contains sufficient information by which "one could begin to draw an inference" that there was a "continuing, widespread, persistent pattern of unconstitutional misconduct" by County employees. *Watkins*, 102 F.4th at 954. Furthermore, I find that the alleged statements to investigators are sufficient allegations for Ms. Zinselmeier to plead that the County exhibited "deliberate indifference to or tacitly authorized" such conduct. *Id.*; *see also Tirado*, 521 F. Supp. 3d at 844 ("Although Tirado does not allege specific facts about the City's deliberation or decision to ignore such incidents, this is likely too much to ask at the pleading stage[.]"). Proof of the alleged statements is not required at the pleading stage. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128-1129 (8th Cir. 2012) ("[D]ocumentary evidence generally is not required at the pleading stage…[e]vidence is not required because on a motion to dismiss, inferences are to be drawn in favor of the non-moving party.") (citing Fed. R. Civ. P. 8). Where, as

17

here, "the defendants may well possess the very documents the plaintiff needs to prove the alleged [claim], it would be odd to demand such documents from the plaintiff before discovery." *Id.* at 1129.

Additionally, the County argues that Ms. Zinselmeier fails to adequately plead the "causation" element of her unconstitutional policy, custom, or practice claim. ECF. No. 9 at 6.  To establish causation, a plaintiff must plead that the municipal policy or custom, "written or unwritten…was the moving force behind the constitutional violation." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013) (internal quotations and citation omitted).  Put differently, a plaintiff must plead that "some municipal action or inaction, taken with deliberate indifference as to its known or obvious consequences caused his injuries." *Id.*  Ms. Zinselmeier alleges that Mr. Zinselmeier was too sick to get out of bed to retrieve his medication at the medical cart, yet no "refusal" form was signed and no medication was administered at his bedside.  ECF. No. 1 at ¶¶ 144, 85, 86.  She alleges, however, that correctional staff recorded Mr. Zinselmeier as a "refusal."  Id. at ¶ 234, 237.  She further alleges that the autopsy showed his cause of death was "hypertensive cardiovascular disease with diabetes mellitus as a significant contributing condition." *Id.* at ¶ 92.  She also alleges the medication that correctional staff failed to administer was to treat diabetes and hypertension and

18

that Mr. Zinselmeier's "symptoms were classic signs of serious medical need(s) particularly in an unmonitored diabetic and hypertensive patient." *Id.* at ¶¶ 30-42.

I find that these are specific factual allegations and are sufficient to plead that there was a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Marsh v. Phelps Cnty.*, 902 F.3d 745, 752 (8th Cir. 2018). Therefore, I find that Ms. Zinselmeier sufficiently pleads that the unofficial custom or practice of recording "refusals" rather than administering medication at detainees' bedsides caused Mr. Zinselmeier's injuries.

Because Ms. Zinselmeier provides sufficient factual allegations to state a claim against the County for maintaining an unconstitutional policy, custom, or practice, I will deny the County's motion to dismiss Count III of Ms. Zinselmeier's Complaint.

### c. *Wrongful death (Count IV)*

Count IV of Ms. Zinselmeier's Complaint for wrongful death against Jefferson County will be dismissed because she fails to plead that an exception to the County's sovereign immunity applies to her claim.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). Under Missouri law, the County "is entitled to sovereign immunity from tort claims 'unless the General Assembly has expressly waived such immunity.'"

19

*Payton v. City of St. Louis*, No. 4:20-CV-00861-SEP, 2021 WL 1222427, at *6 (E.D. Mo. Mar. 31, 2021) (quoting *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. Ct. App. 2012)).  Missouri law recognizes four exceptions to sovereign immunity for common law tort claims:

> (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment (section 537.600.1(1)); (2) where the injury is caused by the dangerous condition of the municipality's property (section 537.600.1(2)); (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental function; and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy (section 537.610).

*Phelps*, 371 S.W.3d at 912 (citing Mo. Rev. Stat. §§ 537.600.1(1), 537.600.1(2), 537.610) (internal quotations omitted).  "Sovereign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case." *Taylor v. St. Louis Cnty.*, No. 4:24-CV-00034-AGF, 2024 WL 3413263, at *8 (E.D. Mo. July 15, 2024) (internal quotations omitted).  At the pleading stage, "it is incumbent upon a plaintiff who seeks to state a claim for relief to specifically allege facts establishing that an exception applies." *Id.* (citing *Boever v. Special Sch. Dist. Of St. Louis Cnty.*, 296 S.W.3d 487, 491 (Mo. Ct. App. 2009)).

The County argues that Ms. Zinselmeier fails to plead that any of the exceptions to sovereign immunity apply in her case.  In his response, Ms. Zinselmeier asserts that sovereign immunity "may be waived to the extent a public

20

entity purchases liability insurance."  ECF. No. 19 at 13-14.  However, her Complaint does not contain any allegations regarding the County having liability insurance, much less any specific factual allegations establishing that the exception applies in Ms. Zinselmeier's case.  *See Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003) ("Because a public entity's liability for torts is the exception to the general rule of sovereign immunity, a plaintiff must specifically plead facts demonstrating that the claim is within [the insurance] exception to sovereign immunity.").  Given that Ms. Zinselmeier is represented by counsel, new allegations raised in her response brief cannot be considered on a motion to dismiss.  *See, e.g.*, *Richmond v. S. Dakota*, No. 4:24-CV-04067-ECS, 2025 WL 815721, at *15 (D.S.D. Mar. 14, 2025) ("Generally, a brief in response to a motion to dismiss cannot cure deficiencies in a plaintiff's pleadings."). "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Id.* (quoting *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)).  The lack of allegations regarding a waiver or any exception to the County's sovereign immunity is fatal to her claim.

Because Ms. Zinselmeier fails to plead that any of the exceptions to sovereign immunity apply or that the County waived its sovereign immunity in this particular case, Count IV of her Complaint will be dismissed.

21

   *d. Discrimination under the Americans with Disabilities Act and Rehabilitation*

   *Act (Counts V & VI)*

Ms. Zinselmeier also brings claims against the County for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.  Count IV and V will be dismissed because her claims of inadequate medical treatment cannot be brought under the ADA or RA.

Title II of the ADA "prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity."  *Randolph v. Rogers*, 170 F.3d 850, 857 (8th Cir. 1999).  "A qualified individual with a disability is defined as any person who 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.' "  *Id.*  (quoting 42 U.S.C. § 12131(2)).  A state prison is a "public entity" under the statute.  *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998).  To state a claim under Title II of the ADA, a plaintiff must plead "(1) that he is a person with a disability as defined by statute; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit because of discrimination based upon his disability."  *Davis v. St. Louis Cnty., Missouri*, No. 4:25-CV-

22

00695-SEP, 2026 WL 864068, at *6 (E.D. Mo. Mar. 30, 2026) (citing *Randolph*, 170 F.3d at 858) (citing 42 U.S.C. § 12131 *et seq.*). "The ADA and the RA are 'similar in substance' and, with the exception of the RA's federal funding requirement, 'cases interpreting either are applicable and interchangeable.' " *Randolph*, 170 F.3d at 858 (citing *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir.1998)).

Ms. Zinselmeier alleges that because Mr. Zinselmeier was denied access to adequate medical treatment, he was therefore denied the "benefits of [the prison's] services, programs, and activities." ECF. No. 1 at ¶ 252. She alleges that the County failed to reasonably accommodate Mr. Zinselmeier's hypertension and diabetes disabilities, such as by providing him with "a way to receive his medication when he was unable to leave his cell or walk to the medication cart at the pod door." *Id.* at ¶¶ 254-259. The County argues that Ms. Zinselmeier's claims have been foreclosed by the Eighth Circuit. Indeed, the Eighth Circuit has held that "improper medical treatment claims may not be brought under the ADA or RA." *A.H. v. St. Louis Cnty., Missouri*, 891 F.3d 721 (8th Cir. 2018) (finding that plaintiffs' claims that they could have "enjoyed the various benefits of jail life but for a lack of adequate medical treatment…are, in essence, claims of inadequate medical treatment" that the Eighth Circuit had already held could not be brought

23

under the ADA or RA) (citing *Shelton v. Ark. Dep't of Human Servs.*, 677 F.3d 837 (8th Cir. 2012)).

Ms. Zinselmeier alleges the County discriminated against Mr. Zinselmeier because detainees who could walk to the pod door received their medication while he did not.  But she fails to allege that Mr. Zinselmeier was discriminated against **"*because of*"** his stated disabilities—diabetes and hypertension. *See Davis*, 2026 WL 864068 at \*7 ("There is a difference between alleging inadequate treatment for a prisoner's disability and alleging that a prisoner was denied access to medical services ***because of*** his or her disability.") (emphasis in original); *see also Postawko v. Missouri Dep't of Corr.*, 2017 WL 1968317, at \*13 (W.D. Mo. May 11, 2017) (finding that plaintiff successfully pled a claim under the ADA because plaintiff alleged the jail "follow[ed] one policy *for inmates with chronic [Hepatitis C]* and another policy for inmates with other disabilities under which they do not receive lifesaving medications") (emphasis added).  I find that Ms. Zinselmeier's claims are only claims of inadequate medical treatment, which the Eighth Circuit has held cannot be brought under the ADA or RA.

Because Ms. Zinselmeier's claims are not actionable under the ADA or RA, I will dismiss Count V and Count VI of her Complaint.

*Claims against Roland Kirchoff*

24

Ms. Zinselmeier also brings claims against Defendant Officer Kirchoff for failure to provide adequate medical care in violation of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983 (Count I) and for wrongful death under Missouri law (Count IV). Officer Kirchoff filed a motion to dismiss Ms. Zinselmeier's wrongful death claim against him. For the reasons set forth below, Officer Kirchoff's motion will be denied.

### a. Wrongful death (Count IV)

In his motion, Officer Kirchoff asserts that Ms. Zinselmeier's wrongful death claim is barred by the doctrine of official immunity. In Missouri, "the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions." *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) (citing *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 585 (8th Cir. 2006)). "There is a 'narrow exception to the application of the official immunity doctrine—i.e., when a public officer fails to perform a *ministerial* duty required of him by law, he may be personally liable for the damages caused.' " *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 629 (8th Cir. 2021) (quoting *State ex rel. Helms v. Rathert*, 624 S.W.3d 159, 163 (Mo. banc 2021)). An act is ministerial when it is "merely clerical." *Id.* "[A] ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. 2019).

25

Conversely, an act is discretionary "where there is any room whatsoever for variation in when and how a particular task can be done." *Davis*, 11 F.4th at 629 (citation omitted). "Whether an act is discretionary or ministerial depends on the degree of reason and judgment required to perform the act." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006) (internal quotations omitted).

Ms. Zinselmeier alleges that Officer Kirchoff had ministerial duties "including but not limited to following standing orders, physicians orders, and medical jail policies, supervising inmates in housing units and conducting count and health checks to ensure that inmates are responsive." ECF. No. 1 at ¶ 239. Officer Kirchoff argues that the duties identified by Ms. Zinselmeier are discretionary, so he can invoke official immunity. ECF. No. 11 at 4-5. At this stage, I need not decide whether Officer Kirchoff's alleged duties were ministerial or discretionary under the law because I find that Ms. Zinselmeier sufficiently pleads that Officer Kirchoff acted with bad faith or malice. Even if an act is determined to be discretionary, "[o]fficial immunity is a qualified immunity…and does not apply to those discretionary acts done in bad faith or with malice." *White*, 865 F.3d at 1074. Ms. Zinselmeier alleges that Officer Kirchoff was told by several detainees that Mr. Zinselmeier was in serious condition and was too sick to walk to the medication cart. She alleges that Officer Kirchoff's response was, "if [Zinselmeier] wants his meds, he can get up and come get it." ECF. No. 1 at ¶ 40.

26

Under Missouri law, bad faith "requires a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive[.]" *Torres v. City of St. Louis*, 39 F.4th 494, 508 (8th Cir. 2022) (citing *N.S. by & through Lee v. Kansas City Bd. of Police Commissioners*, 35 F.4th 1111, 1115 (8th Cir. 2022)). "[M]alice involves actions that are so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or [an] improper or wrongful motive." *Id.*

Not only does Ms. Zinselmeier point to Officer Kirchoff's alleged statement, but she also alleges that Officer Kirchoff was told by other detainees that Mr. Zinselmeier was unresponsive, yet he failed to check on Mr. Zinselmeier or attempt to get a verbal response. ECF. No. 1 at ¶¶ 71-73. I find that these allegations are sufficient for Ms. Zinselmeier to plead the bad faith or malice exception to official immunity. Therefore, I will deny Officer Kirchoff's motion to dismiss her wrongful death claim.

*Conclusion*

Ms. Zinselmeier's claims against the County for failure to train, supervise, or discipline under § 1983 (Count II), wrongful death (Count IV), and for violations of the ADA and RA (Counts V & VI) will be dismissed because I find that she fails to provide sufficient factual allegations to state a claim under the applicable federal statutes and Missouri law. Count III against the County for

27

maintaining an unconstitutional policy, custom, or practice under § 1983 will not be dismissed because Ms. Zinselmeier alleges sufficient facts to state a claim that the County maintained the unconstitutional custom or practice of recording it as a "refusal" when bedridden detainees were too ill to walk to the medication cart rather than administer medication at their bedsides.  For these reasons, I will grant the County's motion in part and deny it in part, and I will deny Officer Kirchoff's motion.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Jefferson County, Missouri's Motion to Dismiss [8] is **GRANTED** as to Counts II, IV, V, and VI of Plaintiff Kristen Zinselmeier's Complaint.

**IT IS FURTHER ORDERED that** Defendant Jefferson County, Missouri's Motion to Dismiss [8] is **DENIED** as to Count III of Plaintiff Kristen Zinselmeier's Complaint.

**IT IS FURTHER ORDERED that** Defendant Roland Kirchoff's Motion to Dismiss [10] is **DENIED.**

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 5th day of August, 2026.