UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTEN ZINSELMEIER, *Individually and on behalf of WILLIAM ZINSELMEIER, deceased*<br><br>Plaintiff,<br><br>v.<br><br>Jefferson County, Missouri, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:25 CV 1893 RWS |

## **MEMORANDUM AND ORDER**

This matter is before me on Defendant Sheriff David L. Marshak's ("Sheriff Marshak") Motion to Dismiss [15], Defendant Brenda Short's ("Short") Motion to Dismiss [17], and Defendant Brandon Shoults's ("Officer Shoults") Motion to Dismiss [53].  On January 6, 2023, William Zinselmeier was an inmate at Jefferson County Jail when he allegedly died in his cell.  On December 31, 2025, his daughter, Kristen Zinselmeier, filed a Complaint against Defendants Jefferson County, Missouri, VitalCore Health Strategies, LLC ("VitalCore"), Sheriff David L. Marshak, Dr. Danny Stanton, the nurses and correctional officers allegedly involved in the incident.  Ms. Zinselmeier asserts claims for constitutional violations and wrongful death against Sheriff Marshak, Short, and Officer Shoults.

1

**Background**

Taken as true for the purpose of ruling on Defendants' motions, Ms. Zinselmeier's Complaint alleges the following facts.

William Zinselmeier was 57 years old when he was detained at the Jefferson County Jail in March 2022.  He suffered from diabetes and hypertension.  At his intake medical assessment, Mr. Zinselmeier informed jail staff that he was prescribed daily medications to manage diabetes and hypertension.  He did not receive these prescription medications in the days leading up to his death.  Beginning in mid-December 2022, Mr. Zinselmeier became increasingly ill.  He experienced symptoms including, but not limited to, severe nausea, vomiting, and weakness.  He was unable to eat, drink, or walk.  Because he was not able to walk, he was not able to retrieve his medications.  He had not eaten for more than four days.

On January 5, 2023, Mr. Zinselmeier filed a written sick call request that he "ha[d] not eaten in 4 days." (ECF. No. 1 at ¶ 33.)  Defendant Brenda Short, a jail administrator, received and read the sick call request.  All of the individual defendants and John Doe defendants were aware that Mr. Zinselmeier was experiencing the aforementioned symptoms.  Despite being aware of his symptoms, Defendant jail nurses did not order or ensure that his vitals were taken or recorded, including his blood pressure and blood glucose levels.  Nor did the jail

2

nurses follow-up and ensure he was receiving his medications.  As Mr. Zinselmeier's condition worsened, several other detainees at the jail informed Defendant correctional Officer Kirchoff that Zinselmeier had not been receiving his hypertension and diabetes medications.  Every day for at least the three days before his death, other detainees reported to Officer Kirchoff that Mr. Zinselmeier was too sick to get up and walk to the medication cart.  Officer Kirchoff responded, "if [Zinselmeier] wants his meds, he can get up and come get it."  (*Id.* at ¶ 40.)

Additionally, Defendant nurses and correctional officers were aware that bedridden detainees, including Mr. Zinselmeier, could not retrieve their medications, yet they continued to record that these detainees had "refused" to take their medication.  Medication was not being administered to detainees who were bedridden.  Mr. Zinselmeier was recorded as having "refused" his medication, and no attempts were made to administer his medication at his bedside.  Short knew about the practice of recording bedridden and ill patients as having "refused" their medication, and that such "refusals" were recorded without the proper refusal forms, progress reports, incident reports, or any other documentation.  On January 6, 2023, Zinselmeier told multiple other detainees that he "felt like he was dying," and he complained to correctional officer Brian Voyles about his illness.  (Id. at ¶ 66.)  Officer Voyles then contacted Defendant Nurse Chelsea Griffon, who told

3

Officer Voyles that she would not check on Mr. Zinselmeier and instead Defendant Nurse Megan Johansson would be in his housing unit in the evening.  Mr. Zinselmeier was on the list to see the jail's Nurse Practitioner, Defendant Keely Dayton, on that Friday, January 6th.  However, Dayton "disregarded her scheduled visit with Zinselmeier, knowing of [his] serious medical need."  (*Id.* at ¶ 122.)

Later that day, at approximately 8:30pm, Mr. Zinselmeier fell out of his bed, making an audible thump noise that was heard by other inmates. Mr. Zinselmeier's fellow detainees saw that he was unresponsive and helped put him back into his bed.  These inmates informed correctional officers, including Officer Kirchoff, that Mr. Zinselmeier was unresponsive and required immediate medical assistance. Officer Kirchoff and the other correctional officer and jail nurse defendants failed to check on Mr. Zinselmeier, call 911, or ensure he received medical care.  At approximately 9:45pm on the same night, Nurse Johansson and Officer Shoults arrived at Mr. Zinselmeier's housing unit with the medication cart.  Despite being informed by other detainees of Mr. Zinselmeier's unresponsiveness, Nurse Johansson failed to provide medical assistance or check on him, and she recorded him as having "refused" his medication.  There is no medication "refusal" form signed by Mr. Zinselmeier or any witnesses to his alleged "refusal."  Several hours later, at approximately 3:40am, Mr. Zinselmeier's cellmate saw that he was not breathing and pressed the emergency call button.  Shortly thereafter, EMS arrived

4

and found Mr. Zinselmeier in asystole.[1]  He was pronounced dead on the scene. An autopsy was conducted by the Office of Dr. Mary E. Case, Chief Medical Examiner, which showed that Mr. Zinselmeier's cause of death was hypertensive cardiovascular disease with diabetes mellitus noted as a significant contributing factor.

Ms. Zinselmeier's Complaint also details various witness statements taken during an investigation by Jefferson County Sheriff's Department Investigators.[2] Witnesses allegedly included fellow detainees, defendants in this case, and Mr. Zinselmeier's cellmate.  Additionally, Ms. Zinselmeier alleges that the investigators reviewed jail surveillance audio and video footage that showed no nurses entered Mr. Zinselmeier's cell on the night of his death.  The video allegedly also shows the moment when Mr. Zinselmeier fell out of his bed and at least four other inmates immediately went to check on him.  The Complaint alleges that one of the inmates is seen on video walking to the "call box" intercom system to notify corrections officers.[3]  Nurse Johansson stated in her interview with the County's investigators that "it was the regular practice in the Jefferson County Jail" for jail medical providers to "record a medical 'refusal' if a sick detainee could not get out of bed, leave their cell, or walk to the medication cart."  (*Id.* at ¶¶

---

[1] Asystole occurs when the heart stops beating (also known as "flat-lining").

[2] The Complaint does not report the results of the investigation.  In ruling on the instant motions to dismiss, I treat the alleged witness testimony as factual allegations made in the Complaint.

[3] Ms. Zinselmeier believes these officers to be John Does 7-9.

5

81-84.)  Officer Shoults also "informed investigators that the practice of the jail medical staff is if a detainee is sick and doesn't 'get up' and get their medication, that is logged as a 'refusal.' "  (*Id.* at ¶ 155.)

Ms. Zinselmeier's Complaint brings several claims against Defendant VitalCore.  She alleges that VitalCore was contracted by Jefferson County to provide medical services and employed Defendant jail nurses and Mr. Zinselmeier's jail physician, Defendant Dr. Danny Stanton.  She also alleges Dr. Stanton failed to monitor Mr. Zinselmeier's blood pressure and blood sugar and failed to ensure that he received his medications as prescribed.  In addition to the Defendants sued in their individual capacities, the Complaint contains allegations against Defendants "acting within the scope and course of employment for their employer(s)."  The Complaint also contains numerous allegations based on various theories of liability against individuals in their supervisory capacity and against Defendants Jefferson County, VitalCore, and Sheriff David L. Marshak.

### Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  In ruling on such a motion, I must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *Hager v. Arkansas Dep't. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).  But I may not "presume the truth of legal conclusions couched as factual

6

allegations." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although I also must generally ignore materials outside the pleadings, I may consider "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the plaintiff pleads sufficient facts to allow me to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires a complaint to contain enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A threadbare recital of the elements of a cause of action, supported merely by conclusory allegations, is not sufficient. *Iqbal*, 556 U.S. at 678.

## Discussion[4]

*Claims against Sheriff Marshak*

   *a.  Failure to train, supervise, or discipline employees (Count II)*

Count II of Ms. Zinselmeier's Complaint brings § 1983 claims for failure to train, supervise, or discipline employees ("Monell/Canton Liability")[5] against Sheriff Marshak in both his official and individual capacity.[6]  Count II against Sheriff Marshak in his official capacity will be dismissed because the Complaint does not contain sufficient allegations to show Sheriff Marshak was on notice of the failure to train, supervise, or discipline employees.  Count II against Sheriff Marshak in his individual capacity will be dismissed because the claim is barred by qualified immunity.

Ms. Zinselmeier's failure to train, supervise, or discipline claim against Sheriff Marshak in his official capacity is treated as a claim against Jefferson County.  "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Marsh v. Phelps Cnty.*, 902 F.3d 745, 751

---

[4] Zinselmeier's Complaint contains numerous allegations made "upon information and belief."  As discussed in my Order regarding the County and Officer Kirchoff's motions to dismiss, I consider whether the allegations he pleads upon information and belief are supported by at least "some factual basis for the inference of liability or the reasonable belief that the information supporting such liability is in the sole possession of the defendant."  *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 955 (8th Cir. 2023).

[5] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

[6] Zinselmeier's Complaint states, "Defendant Marshak was acting under color of state law and authority of his position as Sheriff of Jefferson County, Missouri…For the purposes of Plaintiff's federal claims, Defendant Marshak is named in his individual capacity[.]" ECF. No. 1 at ¶ 8.  "At the motion to dismiss stage,  the complaint should be read as a whole…and the nonmoving party receives the benefit of reasonable inferences." *Carlson v. Centene*, No. 4:23CV931 HEA, 2024 WL 2862584, at *2 (E.D. Mo. June 6, 2024).

(8th Cir. 2018); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that the plaintiff "filed suit against [the Sheriff and Deputy] in their official capacities, and as such, it must be treated as a suit against the County"). To sustain "the actions against [defendants] in their official capacities, [plaintiff] must prove that the County *itself* caused the constitutional violation at issue." *Marsh*, 902 F.3d at 751 (emphasis in original).  In ruling on the County's motion to dismiss, I determined that Ms. Zinselmeier's Complaint fails to sufficiently allege that the County was *on notice* that its training and supervision were inadequate. Ms. Zinselmeier only offers the conclusory allegation that the County and Sheriff Marshak were "on notice" of the "obvious need for training and supervision and the inadequacy of their training and supervision."  ECF. No. 1 at ¶ 192.  As a result, Ms. Zinselmeier fails to state an official capacity claim against Sheriff Marshak for failure to train, supervise, or discipline employees.[7]

Moreover, I find that Ms. Zinselmeier's failure to train, supervise, or discipline claim against Sheriff Marshak in his individual capacity is barred by qualified immunity.  "When a supervising official who had no direct participation in the alleged constitutional violation is sued for failure to train or supervise, the supervisor is entitled to qualified immunity unless the plaintiff alleges the

---

[7] I also note that Ms. Zinselmeier does not bring an unconstitutional policy, custom, or practice claim against Sheriff Marshak in his official or individual capacity.  Count III of Zinselmeier's Complaint for maintaining an unconstitutional policy, custom, or practice is only brought against Jefferson County and VitalCore.  *See* ECF. No. 1 at 45.

supervisor: (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Stevens v. Clay Cnty. Sheriff's Dep't*, No. 4:19-CV-00831-HFS, 2021 WL 12311050, at *7 (W.D. Mo. Sept. 23, 2021) (citing *S.M. v. Krigbaum*, 808 F.3d 335 (8th Cir. 2015)).  "Qualified immunity from supervisory liability turns on what [the supervisor] knew of [the subordinate's] actions."  *Krigbaum*, 808 F.3d at 340. Here, Ms. Zinselmeier fails to provide sufficient factual allegations showing that Sheriff Marshak was on notice of a pattern of unconstitutional acts committed by jail employees.  She only provides the bare assertion that Sheriff Marshak was "on notice of the obvious need for training…and [was] deliberately indifferent to said need."  ECF. No. 1 at ¶ 197.  Her Complaint is devoid of any allegations that Sheriff Marshak was on notice due to, for example, prior similar occurrences at the jail.  *See, e.g.*, *Stevens*, 2021 WL 12311050 at *10 (dismissing individual capacity claim because "[a]lthough plaintiff has alleged there is an 'obvious' potential for violation of constitutional rights, he has failed to allege any other facts that [Sheriff] Vescovo had any sort of notice…[t]here are no allegations that the occurrence here was a 'recurring situation' ").

Additionally, nowhere in Ms. Zinselmeier's Complaint does she allege that Sheriff Marshak *directly participated* in the unconstitutional conduct.  "A supervisor may be individually liable under § 1983 'if he directly participates in a

constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.' " *Armstrong v. City of Minneapolis*, 525 F. Supp. 3d 954, 965 (D. Minn. 2021) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).  Nor does Ms. Zinselmeier allege "the type of training that did or did not occur, or how the training that did occur was inadequate." *Esparza v. Manley*, No. 4:18-CV-00782-RWS, 2019 WL 4643993, at *3 (E.D. Mo. Sept. 24, 2019) (granting defendants' motion for judgment on the pleadings as to the individual capacity claim against supervisory officer).  "Proving deliberate indifference requires more than the mere assertion that [the supervisor] could have trained other employees better[.]" *Id.*  Ms. Zinselmeier does not provide any factual allegations regarding the aspects of Sheriff Marshak's training that were lacking or inadequate.  Ms. Zinselmeier merely asserts that the deficiencies in training were "obvious" because of the defendant correctional officers' allegedly unconstitutional conduct.  *See* ECF. No. 1 at ¶ 197.  The allegations in her Complaint are insufficient to plead an individual capacity claim against Sheriff Marshak for failure to rain, supervise, or discipline under § 1983.

As a result, I find that Ms. Zinselmeier fails to state a claim against Sheriff Marshak in either his official or individual capacity for failure to train, supervise, or discipline employees under § 1983.  Count II against Sheriff Marshak will be

11

dismissed.

### b. Wrongful death (Count IV)

Count IV against Sheriff Marshak will be dismissed because Ms. Zinselmeier fails to plead that he was personally involved in the provision of his medical care or in the alleged events that took place on the day of Mr. Zinselmeier's death.

Sheriff Marshak asserts that he is immune from liability under the public duty and official immunity doctrines. Ms. Zinselmeier's Complaint alleges:

> correctional duties including a duty to summon EMS upon learning of a medical emergency, Compl. ¶ 235(a), a duty to ensure access to prescribed medication, ¶ 235(b), a duty to follow written jail policies, ¶ 235(d); and ministerial duties to adhere to standing orders and conduct health checks, ¶ 239…Marshak breached specific duties related to jail medical care and monitoring…Marshak was the Sheriff responsible for jail operations and for training and supervising correctional staff. Compl. ¶ 8.

ECF. No. 21 at 9-10 (citing ECF. No. 1). Under the public duty doctrine, "a public employee s not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers v. City of Farmington*, 263 S.W.3d 603, 611 (Mo. 2008). "[W]here the duty is owed to the public and not to a particular individual, the plaintiff cannot plead a claim for relief." *Davis v. Buchanan Cnty., Missouri*, No. 17-06058-CV-SJ-SWH, 2018 WL 4189631, at *5 (W.D. Mo. Aug. 31, 2018) (citing *Rodgers v. City of N. Kansas City*, 340 S.W.3d 154, 159 (Mo. Ct. App. 2011)). "A duty is owed to a particular individual when 'the law imposes on the officer the performance of ministerial duties in which a

private individual has a special, direct, and distinctive interest ....' " *Id.* (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986)).  Ms. Zinselmeier does not allege that Sheriff Marshak was personally involved in Mr. Zinselmeier's medical care or that Sheriff Marshak's alleged duties were owed to Mr. Zinselmeier as opposed to the general public.  Ms. Zinselmeier's allegations arise out of Sheriff Marshak's position as the Sheriff and alleged supervisor of correctional staff.

Courts that have considered the issue have held that alleged duties to supervise, train, and ensure adherence to policies and procedure are duties owed to the general public as opposed to any particular individual.  *See, e.g.*, *id.* (finding plaintiffs' wrongful death claim barred by the public duty doctrine because "Warden Crews' duty to ensure proper training, policies, and/or safety measures are in place are duties owed to the public, not an individual" and there were "no allegations that Warden Crews was directly involved in the care of the decedent"); *Rodgers*, 340 S.W.3d at 160-161 ("Based on the nature of each defendant's responsibilities and the fact that they did not provide treatment to [plaintiff] or have any direct contact with her prior to or during the incident, we find that the defendant owed a duty to the general public rather than to [plaintiff] in particular."); *Southers*, 263 S.W.3d at 621 (noting that supervising police officer's "duties to create and implement police procedures and policies and to train police

officers are duties owed to the general public"). Ms. Zinselmeier's wrongful death claim against Sheriff Marshak is based on his supervisory role and the alleged duties he owed to the public at large. For this reason, her claim is barred by the public duty doctrine.

Because I find that Sheriff Marshak is immune under the public duty doctrine from Ms. Zinselmeier's wrongful death claim, I do not reach the issue of whether he is also immune under the official immunity doctrine. As a result, Count IV against Sheriff Marshak will be dismissed.

*Claims against Brenda Short*

 *a. Failure to provide adequate medical care (Count I)*

Ms. Zinselmeier brings a § 1983 claim against Short for failure to provide adequate medical care in violation of the Eighth and Fourteenth Amendments. Ms. Zinselmeier brings this claim against Short in both her official capacity as a jail administrator and in her individual capacity.[8]

The legal framework for analyzing Ms. Zinselmeier's claim under the Eighth and Fourteenth Amendments is the same. *See McKee v. Brady*, No. CV 23-1684 (DWF/ECW), 2025 WL 1115026, at *3 (D. Minn. Apr. 15, 2025) ("A claim for failure to provide adequate medical care is analyzed using the same framework for

---

[8] Ms. Zinselmeier's Complaint states, "Defendant Short was acting under the color of state law and authority of her position with Defendants Jefferson County and/or VitalCore…[f]or the purposes of Plaintiff's federal claims, Defendant Short is named in her individual capacity." ECF. No. 1 at ¶ 14.

both the Eighth and Fourteenth Amendments.") (citing *Walton v. Dawson*, 752 F.3d 1109, 1117-19 (8th Cir. 2014)).  To successfully plead a claim for failure to provide adequate medical care, a plaintiff must sufficiently allege the "[defendant] committed acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical need."  *Cannon v. Dehner*, 112 F.4th 580, 586 (8th Cir. 2024) (internal quotations omitted) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  First, a plaintiff must provide sufficient factual allegations to "demonstrate an objectively serious medical need." *Id.*  Second, a plaintiff must provide sufficient factual allegations to "show that [defendant] 'actually knew of, but deliberately disregarded, such need.' " *Id.* (quoting *Corwin v. City of Independence*, 829 F.3d 695, 698 (8th Cir. 2016)). "Negligence, gross negligence, and a disagreement with the course of provided medical care is not enough" to plead deliberate indifference to medical need. *Gardner v. Page*, No. 3:21-CV-00116-JM-JJV, 2021 WL 3662849, at * 2 (E.D. Ark. July 8, 2021).  Deliberate indifference "requires proof of a reckless disregard of the known risk." *Id.*

Short asserts that Ms. Zinselmeier's claim is barred by qualified immunity.  She also argues that Ms. Zinselmeier fails to allege that Short "actually knew of" and "deliberately disregarded" an "objectively serious medical need."  ECF. No. 18 at 2-4.  "A serious medical need is 'one that has been diagnosed by a physician as

requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Fourte v. Faulkner Cnty., Ark.*, 746 F.3d 384, 388 (8th Cir. 2014) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir.1997)).  I find that Ms. Zinselmeier provides sufficient factual allegations to show Mr. Zinselmeier suffered from an objectively serious medical need.  Ms. Zinselmeier alleges Mr. Zinselmeier was diagnosed with diabetes and hypertension and informed jail staff of these medical conditions during his intake assessment. She alleges that as Mr. Zinselmeier's illness progressed, his symptoms included severe nausea, vomiting, and weakness, and he became unable to walk and was bedridden before his death.  ECF. No. 1 at ¶¶  29-32.  She further alleges Mr. Zinselmeier filed a written sick call request that he "ha[d] not eaten in 4 days, told multiple detainees that he felt like he was "dying," was on the list to see jail Nurse Practitioner Dayton, and informed correctional staff about his worsening condition. *Id.* at  ¶¶ 32-41, 66, 121.

The Eighth Circuit held that similar factual allegations made by detainees were sufficient to plead an objectively serious medical need.  *See Mitchell v. Saint Louis Cnty.*, Missouri, 160 F.4th 950, 957-958 (8th Cir. 2025) (finding plaintiff plausibly pleaded a serious medical need by alleging symptoms including the " 'worst headache of [plaintiff's] life,' nausea, vomiting, hearing loss, dizziness, difficulty standing, an inability to walk, an inability to eat, and slurred speech"); *see also*

16

*Troupe v. Young*, 143 F.4th 955, 969 (8th Cir. 2025) (same).  "[P]rison officials'

background knowledge is part of the analysis as to whether a medical need is

sufficiently obvious."  *Mitchell*, 160 F.4th at 958 (distinguishing its finding of no

serious medical need in *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478 (8th Cir. 2008),

where "prison officials had no background knowledge that made it obvious

[plaintiff's] symptoms required medical attention" because she had "psychological

trouble and had been labeled as a 'difficult inmate' ").  Here, there is no indication

that Mr. Zinselmeier had any psychological issues or had been labeled as a

"difficult inmate" by jail officials.  As a result, I find Ms. Zinselmeier's allegations

"establish that [jail officials] had sufficient background knowledge to recognize the

objective seriousness of [the medical] condition."  *Id.*  As a result, Ms. Zinselmeier

has successfully pleaded that Mr. Zinselmeier had a serious medical need.

Additionally, I find that Ms. Zinselmeier sufficiently alleges Short actually

knew of and deliberately disregarded Mr. Zinselmeier's serious medical need.

"Prisoners may prove deliberate indifference by showing that the total deprivation

of medical care resulted in 'pain and suffering' or a 'lingering death.' "  *Langford*

*v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Estelle*, 429 U.S. at 103).

"[I]f [the administrator] knew that [plaintiff's] serious medical needs were not

being adequately treated yet remained indifferent, he may be held personally

liable."  *Id.* at 460-461.  Short argues that "the majority of" Ms. Zinselmeier's

allegations are only directed at Short in her capacity as a supervisor.  ECF. No. 18 at 3.  Ms. Zinselmeier alleges, however, that *Short received and "read" Mr. Zinselmeier's written sick call request* that "he ha[d] not eaten in 4 days."  ECF. No. 1 at ¶¶ 33-34 (emphasis added).  She also alleges that Short "participated in regular meetings with medical staff where inmate health concerns, including [Mr.] Zinselmeier's, were discussed."  Id. at ¶ 45-46.

These are specific factual allegations demonstrating that Short actually knew of Zinselmeier's diabetes and hypertension and that he was so sick that he had not eaten in four days despite having diabetes.  Yet it does not appear that Mr. Zinselmeier received *any* treatment as his condition worsened or that there was a response to his sick call request.  Ms. Zinselmeier sufficiently alleges Short was *personally involved* in failing to provide Mr. Zinselmeier with any medical treatment.  She also provides sufficient factual allegations to show Short actually knew of Mr. Zinselmeier's serious medical need and that she remained indifferent.  Because Ms. Zinselmeier successfully pleads deliberate indifference, qualified immunity does not bar her claim.  *See Mitchell*, 160 F.4th at 961 n.4 ("[O]fficials are not entitled to qualified immunity at the pleading stage where a plaintiff has plausibly pleaded a claim of deliberate indifference.").

Although Ms. Zinselmeier states an Eighth Amendment claim against Short in her individual capacity, I find she fails to state an Eighth Amendment claim against

Short in her official capacity.  Ms. Zinselmeier's official capacity claim against Short is treated as a claim against Jefferson County.  *See Marsh*, 902 F.3d at 751. Nowhere in Ms. Zinselmeier's Complaint does she allege that there was "any policy, custom, or official action" by the County that resulted in Short's alleged deliberate indifference to his medical care.  *See, e.g.*, *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (affirming summary judgment for defendants on official capacity claim against prison officials for delay in providing medical care because plaintiff "ha[d] not pointed to any policy, custom, or practice that resulted in this delay"); *Wilson v. Bros.*, No. 4:24-CV-00245-KGB-PSH, 2024 WL 5681682, at *1 (E.D. Ark. Oct. 28, 2024) ("[County employee] can only be held liable in her official capacity [on Eighth Amendment claim]…if [plaintiff] can establish that a constitutional violation was committed pursuant to *an official custom, policy, or practice of the governmental entity*.") (emphasis added).  Ms. Zinselmeier fails to identify any *official custom, policy, or practice* of the County that resulted in Short's alleged failure to respond to Mr. Zinselmeier's sick call request.

As a result, Count I of Ms. Zinselmeier's Complaint against Short *will be dismissed* insofar as Ms. Zinselmeier brings a claim against Short in her *official capacity*.  Count I will *not be dismissed* insofar as Ms. Zinselmeier brings a claim against Short in her *individual capacity*.

### b. *Failure to train, supervise or discipline employees (Count II)*

Count II of Ms. Zinselmeier's Complaint brings a § 1983 claim against Short for failure to train, supervise, or discipline employees.  Count II will be dismissed insofar as it is brought against Short in her official capacity as a jail administrator. Count II will not be dismissed insofar as it is brought against Short in her individual capacity.

In ruling on Jefferson County's motion to dismiss, I determined that Ms. Zinselmeier's Complaint fails to state a claim against the County for failure to train, supervise, or discipline employees under § 1983.  Because Ms. Zinselmeier's official capacity claim against Short is treated as a claim against the County, Ms. Zinselmeier fails to state an official capacity claim against Short.  I find, however, that Ms. Zinselmeier successfully pleads a failure to train, supervise, or discipline claim against Short in her individual capacity.  In her Complaint, Ms. Zinselmeier alleges Short, as a jail administrator, "was responsible for hiring and training healthcare staff to work at the Jefferson County Jail…and [met] with healthcare and correctional staff on a regular basis." ECF. No. 1 at ¶ 14.  She further alleges that "Short knew about the systemic official policy, custom, or practice of recording or allowing to be recorded that bedridden and ill patients had 'refused' their medication." *Id.* at ¶ 43.  She alleges Short "was also aware that these 'refusals' had been recorded without proper refusal forms, incident reports,

20

progress notes, or other documentation" and Short "participated in regular meetings with medical staff where inmate health concerns, including [Mr.] Zinselmeier's, were discussed." Id. at ¶¶ 44-45. Ms. Zinselmeier provides specific allegations regarding Short's awareness of the allegedly unconstitutional practice of medical staff recording that bedridden detainees had "refused" their medications without proper documentation.

Short asserts that qualified immunity bars Ms. Zinselmeier's individual capacity claim. Short "may be liable under § 1983 if [she] (1) had "notice of a pattern of unconstitutional acts committed by subordinates"; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take "sufficient remedial action"; (4) proximately causing injury to [Mr. Zinselmeier]." *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012). "In order to show deliberate indifference or tacit authorization, [plaintiff] must allege and ultimately prove [the supervisor] ad notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Id.* at 355-356 (internal quotations omitted). Ms. Zinselmeier plausibly alleges that Short was aware of the practice of medical staff recording that bedridden detainees had "refused" their medication without the proper documentation and that such practice was "likely to result in a constitutional violation." *Id.* At the pleading stage, I find these allegations sufficient to show Short "had notice of a pattern of unconstitutional acts committed

21

by subordinates" and was "deliberately indifferent to or tacitly authorized those acts." *Id.*

Importantly, Ms. Zinselmeier alleges that Mr. Zinselmeier became bedridden due to his illness and medical staff recorded that he "refused" his medication. ECF. No. 1 at ¶ 57.  She alleges that Mr. Zinselmeier and/or witness(es) did not sign a refusal form and there was no other documentation regarding Mr. Zinselmeier "refusing" his medication.  *Id.* at ¶¶ 81-86.  Ms. Zinselmeier alleges that medication was not administered at Mr. Zinselmeier's or other bedridden detainees' bedsides.  Moreover, Ms. Zinselmeier alleges Short's personal involvement in the incident forming the basis of her Complaint.  "To establish personal liability for the supervisory defendants, [plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."  *Wilmoth v. Gilbert*, No. 5:16-CV-5244, 2018 WL 988102, at *15 (W.D. Ark. Feb. 20, 2018) (citing *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)).  Here, Ms. Zinselmeier alleges Short received and read Mr. Zinselmeier's sick call request, that she hired and trained medical staff at the jail, and that she was at least involved in regular meetings with medical staff where Mr. Zinselmeier's health concerns were discussed.  Ms. Zinselmeier sufficiently alleges both Short's personal involvement in the failure to provide Mr. Zinselmeier with adequate medical care and her awareness of systemic issues with staff recording

refusals rather than administering medication directly to bedridden detainees.

Because I find Ms. Zinselmeier has sufficiently alleges deliberate indifference, qualified immunity does not bar her claim.  *See Mitchell*, 160 F.4th at 961 n.4. Count II will be dismissed insofar as Ms. Zinselmeier brings her § 1983 claim against Short in Short's official capacity.  Count II will not be dismissed insofar as Ms. Zinselmeier brings her § 1983 claim against Short in Short's individual capacity.

*Claims against Brenda Short and Officer Shoults*

　a.　*Wrongful death (Count IV)*

Count IV against Short and Officer Shoults for wrongful death will not be dismissed because I find that the public duty doctrine and official immunity do not bar Ms. Zinselmeier's claim.

The "public duty doctrine does not insulate a public employee from liability for breach of ministerial duties in which an injured party had a 'special, direct, and distinctive interest.' " *Balducci v. Missouri Dep't of Corr.*, No. 2:21-CV-04022-NKL, 2021 WL 4206623, at *6 (W.D. Mo. Sept. 15, 2021) (quoting *Southers*, 263 S.W.3d at 611).  "[W]hen injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's breach of duty, the public duty doctrine does not apply." *Id.*  Officer Shoults argues that Ms. Zinselmeier's Complaint only alleges duties owed to the general public and not Mr. Zinselmeier.

Ms. Zinselmeier alleges Nurse Johansson and Officer Shoults "arrived at [Mr.] Zinselmeier's housing unit or pod with the medication cart [at] about 9:45 p.m. on January 6, 2023, shortly after Zinselmeier fell out of bed and while he was unresponsive." ECF No. 1 at ¶ 75. She alleges that "multiple detainees informed…Shoults of Mr. Zinselmeier's dire medical condition, that he fell out of bed, couldn't walk and was also now unresponsive" and that despite his knowledge that Mr. Zinselmeier was unresponsive, Officer Shoults "did nothing and made no attempts to provide Zinselmeier his medication, a medical assessment or escalate care." *Id.* at ¶¶ 76, 87. She alleges that EMS was not called until approximately 3:40 a.m.—nearly six hours after Officer Shoults was allegedly informed that Mr. Zinselmeier was unresponsive in his cell. *Id.* at ¶¶ 89-90. She alleges Officer Shoults had a duty to follow jail policies, including "Jefferson County Jail Policy J-005," which states " 'When staff observes or is informed of a detainee experiencing a medical emergency, they must *immediately notify medical staff, the shift supervisor, and summon emergency medical services (EMS/ambulance) if necessary.*' " (emphasis in original). *Id.* at ¶ 162. Ms. Zinselmeier asserts that Officer Shoults's duties were ministerial and therefore owed directly to Mr. Zinselmeier.

At this early stage of the litigation, I need not decide whether Officer Shoults owed Mr. Zinselmeier a duty under the public duty doctrine. *See, e.g.*, *Teague v.*

24

*St. Charles Cnty.*, 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010) (declining to decide on a motion to dismiss whether defendant was immune under the public duty doctrine because "[w]hether an individual has such a private interest depends on the facts of each case").  Some courts that have considered the issue have found that "duties regarding timed checks of inmates…are ministerial" and are owed to the inmate.  *Balducci*, 2021 WL 4206623, at *6; *see also Tanner v. City of Sullivan*, No. 4:11-CV-1361 NAB, 2013 WL 121536 (E.D. Mo. Jan. 9, 2013) (denying immunity under the public duty doctrine because plaintiffs "introduced sufficient evidence that a reasonable jury might find that the risk of suicide…was reasonably foreseeable as a result of the Defendants' failure to follow the policies regarding thorough and systematic searches….").  "Because the goal of such checks, supervision, and monitoring is to ensure the safety of prisoners and staff, and not the safety of the public in general, they were duties in which…an inmate, had a special, direct, and distinctive interest."  *Balducci*, 2021 WL 4206623, at *6. Without more information on the alleged policies, I cannot determine whether the public duty doctrine applies to bar Ms. Zinselmeier's claim.  In any event, I find Ms. Zinselmeier's Complaint contains sufficient factual allegations to survive dismissal.

Officer Shoults also invokes the official immunity doctrine.  In Missouri, "the official immunity doctrine protects public officials from liability for injuries

25

arising out of their discretionary acts or omissions." *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) (citing *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 585 (8th Cir. 2006)).  "There is a 'narrow exception to the application of the official immunity doctrine—i.e., when a public officer fails to perform a ministerial duty required of him by law, he may be personally liable for the damages caused.' " *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 629 (8th Cir. 2021) (quoting *State ex rel. Helms v. Rathert*, 624 S.W.3d 159, 163 (Mo. banc 2021)).  An act is ministerial when it is "merely clerical." *Id.*  "[A] ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. 2019). Conversely, an act is discretionary "where there is any room whatsoever for variation in when and how a particular task can be done." *Davis*, 11 F.4th at 629 (citation omitted).  "Whether an act is discretionary or ministerial depends on the degree of reason and judgment required to perform the act." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006) (internal quotations omitted).

Officer Shoults argues that his duties under the specific jail policies cited in Ms. Zinselmeier's Complaint were discretionary and are covered by the official immunity doctrine.  Ms. Zinselmeier points to the Eighth Circuit's decision in *Letterman v. Does*, where the Court held that an officer's duty "to report a medical

26

emergency" pursuant to the jail's "close-observation policy"[9] was ministerial. 859 F.3d 1120, 1126 (8th Cir. 2017). Officer Shoults contends, "the cited policy, J-005, requires personal judgment as to whether the detainee is "experiencing a medical emergency …" ECF. No. 56 at 4. However, the Court in *Letterman* held, "even if discretion is involved in determining whether the inmate has manifested the necessary response, *it does not follow that the act of reporting a medical emergency when a response is not received is discretionary.*" *Letterman*, 859 F.3d at 1126. As with the public duty doctrine, I need not determine whether Officer Shoults's duties pursuant to the cited jail policies were discretionary or ministerial at this early stage of the litigation. See, e.g., *Teague*, 708 F. Supp. 2d at 940-941 (noting at the motion to dismiss stage that "the test for whether an act is 'discretionary' or 'ministerial' is fact-intensive, and, again, determination of this issue cannot be made at this time") (internal citation omitted). I note that the determination of whether Officer Shoults's alleged duties were discretionary or ministerial may require more evidence on the specific policies at issue. As a result, I find that official immunity does not bar Ms. Zinselmeier's wrongful death claim against Officer Shoults.

Regarding Ms. Zinselmeier's wrongful death claim against Short, I find Ms.

---

[9] "The close-observation policy requires officers to check on the inmate every fifteen minutes and report as a medical emergency any instance when they cannot observe movement or obtain a verbal response or when it appears that the inmate is not breathing." *Letterman*, 859 F.3d at 1126.

Zinselmeier sufficiently alleges that Short was *personally involved* in Mr. Zinselmeier's medical care at the Jefferson County Jail. *See, e.g., Rodgers*, 340 S.W.3d at 160-161 (finding duty owed only to general public where defendant had "no direct contact" with plaintiff). Short asserts that Ms. Zinselmeier's "allegations against Short arise from her supervisor duties," which are owed to the public at large. ECF. No. 49 at 5. But as previously explained, Ms. Zinselmeier alleges Short received and read Mr. Zinselmeier's sick call request and was involved in regular meetings where inmate health concerns, including Mr. Zinselmeier's, were discussed. These allegations demonstrate direct involvement in the events leading up to Mr. Zinselmeier's death. She alleges Short owed Mr. Zinselmeier a "duty to ensure access to prescribed medications, including arranging cell-side delivery when an inmate is too ill to walk to the medication cart" and the duty to follow other written jail policies regarding detainees' medical care. ECF. No. 1 at ¶¶ 235-243. As with Ms. Zinselmeier's wrongful death claim against Officer Shoults, I need not determine whether Short's alleged duties were discretionary or ministerial at this stage of the litigation. Again, I note that more evidence may be required to determine whether the specific jail policies identified in Ms. Zinselmeier's Complaint would have imposed discretionary or ministerial duties on Short. Short's invocation of the public duty doctrine and official immunity do not bar Ms. Zinselmeier's wrongful death claim against Short.

28

Because I find Ms. Zinselmeier's Complaint contains sufficient allegations at this stage of the proceedings to survive dismissal, Count IV for wrongful death against Short and Officer Shoults will not be dismissed.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Sheriff David L. Marshak's Motion to Dismiss [15] is **GRANTED.**

**IT IS FURTHER ORDERED that** Defendant Brenda Short's Motion to Dismiss [17] Counts I & II in her official capacity is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant Brenda Short's Motion to Dismiss [17] Counts I & II in her individual capacity and Count IV is **DENIED.**

**IT IS FURTHER ORDERED that** Defendant Brandon Shoults's Motion to Dismiss [53] is **DENIED.**

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 5th day of August, 2026.

29