UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTEN ZINSELMEIER, *Individually and on behalf of WILLIAM ZINSELMEIER, deceased* | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:25 CV 1893 RWS |
| Jefferson County, Missouri, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before me on Defendant Brandon Shoults's ("Officer Shoults") Motion for Reconsideration [62] of the denial of his motion to dismiss pursuant to Federal Rule of Civil Procedure 54(b). On August 5, 2026, I denied Officer Shoults's motion to dismiss Plaintiff Kristen Zinselmeier's wrongful death claim against him. For the reasons set forth below, Officer Shoults's motion for reconsideration will be denied.

**Legal Standard**

The Federal Rules of Civil Procedure "do not expressly provide for motions to reconsider." *MacCormack v. Adel Wiggins Grp.*, No. 4:16-CV-414-CEJ, 2017 WL 1426009, at *1 (E.D. Mo. Apr. 21, 2017). But a district court "has the

inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) (construing a motion to amend an interlocutory order "in light of Rule 54(b) and the district court's inherent power"). Under Rule 54(b), "any order or other decision, however designated…may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Thunder Basin Coal Co. v. Zurich Am. Ins. Co.*, No. 4:12CV231 CDP, 2013 WL 6410012, at *1 (E.D. Mo. Dec. 9, 2013) ("[U]nder Rule 54(b), F.R. Civ. P., [interlocutory orders] may be revised at any time before entry of final judgment.").

A district court may revise an interlocutory order to " 'correct any clearly or manifestly erroneous findings of fact or conclusions of law.' " *MacCormack*, 2017 WL 1426009, at *2 (quoting *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, No. 4:00-CV-1073 (CEJ), 2011 WL 1599550, at *1 (E.D. Mo. Apr. 27, 2011)). "Reconsideration may be granted if the earlier decision (1) misunderstood a party, (2) made a decision outside of the adversarial issues, or (3) would be rendered incorrect because of a 'controlling or significant change in law' since issues were submitted to the Court." *Trickey v. Kaman Indus. Techs. Corp.*, No. 1:09-CV-00026-SNLJ, 2011 WL 2118578, at *2 (E.D. Mo. May 26, 2011) (quoting *Westinghouse Electric Co. v. United States*, No. 4:03–CV–861, 2009 WL

881605, at *4 (E.D.Mo. Mar. 30, 2009)). However, Rule 54(b) is "not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015). Moreover, "the Court also has an interest in judicial economy and ensuring respect for the finality of its decisions, values which would be undermined if it were to routinely reconsider its interlocutory orders." *Trickey*, 2011 WL 2118578, at *2.

**Discussion**

Officer Shoults requests that I reconsider my order denying his motion to dismiss Ms. Zinselmeier's wrongful death claim against him. In my August 5th Order, I held that the official immunity doctrine did not bar Ms. Zinselmeier's claim. In line with other courts within this district, I concluded that I need not determine whether Officer Shoults's duty pursuant to the alleged jail policy, J-005, was discretionary or ministerial at this early stage of the litigation. *See* ECF. No. 58 at 27-28 (citing *Teague v. St. Charles Cnty.*, 708 F. Supp. 2d 935, 940-41 (E.D. Mo. 2010)). Because I determined that whether a policy imposes discretionary or ministerial duties is "fact-intensive," I noted my decision "*may* require more evidence on the specific [jail] policies at issue." *Id.* at 27 (quoting *Teague*, 708 F. Supp. 2d at 940-41) (emphasis added).

In an opinion issued the day after I denied Officer Shoults's motion to dismiss, the Eighth Circuit held that a plaintiff "must sufficiently *plead* factual allegations establishing that the acts in question were ministerial" and fall under the ministerial duty exception to the official immunity doctrine. *Williams v. Missouri Dep't of Corr.*, 186 F.4th 503, 513 (8th Cir. 2026) (emphasis added). To survive a motion to dismiss, Missouri law requires a plaintiff "plead factual allegations affirmatively establishing an exception to official immunity." *Id.* (quoting *Forester v. May*, 671 S.W.3d 383, 387 (Mo. 2023)). The court held that the district court had "erroneously stated that, because this is a fact-specific inquiry, 'determination of [whether an act is ministerial or discretionary] cannot be made at this stage in the proceedings.' " *Id.* As set forth by the Eighth Circuit in *Williams*, the "relevant inquiry" at the motion to dismiss stage is whether a plaintiff "pled sufficiently plausible factual allegations that would render official immunity inapplicable, not whether further factual development would more definitively answer the inquiry[.]" *Id.*

Indeed, the Eighth Circuit's decision in *Williams* is a controlling change in the law and could serve as a reason to reconsider my August 5th Order. But *Williams* only conflicts with my August 5th Order insofar as I held that more evidence may be necessary to determine whether the policy at issue was ministerial or discretionary. Applying *Williams* here, the issue before me is whether Ms.

Zinselmeier pleads sufficiently plausible factual allegations establishing that Officer Shoults failed to perform a ministerial duty under the alleged jail policy, J-005. I find that Ms. Zinselmeier does. As a result, I will deny Officer Shoults's motion for reconsideration based on official immunity.

Officer Shoults argues that under *Williams*, Ms. Zinselmeier fails to sufficiently plead factual allegations demonstrating that Officer Shoults had a ministerial duty under J-005. Officer Shoults also cites the Eighth Circuit's decision in *Headley v. Centurion of Mo., LLC*, 178 F.4th 429 (8th Cir. 2026), in support of his position that J-005 imposed only a discretionary duty on Officer Shoults and he should be entitled to official immunity. As it is alleged in Ms. Zinselmeier's Complaint, Jefferson County Jail policy J-005 states, "When staff observes or is informed of a detainee experiencing a medical emergency, they must *immediately notify medical staff, the shift supervisor, and summon emergency medical services (EMS/ambulance) if necessary*." ECF No. 1 at ¶ 162 (emphasis in original). Officer Shoults asserts J-005 is similar to the alleged jail policies at issue in *Williams* and *Headley*. In both cases, the Eighth Circuit held the correctional staff defendants had discretionary and not ministerial duties under the alleged jail policies and were entitled to official immunity. *See Williams*, 186 F.4th at 513-14 (citing *Headley*, 178 F.4th at 435). According to Officer Shoults, J-005 is "inherently discretionary" because "[i]t includes an assessment of the information

provided, who is providing the information, the credibility of the informant, and whether there is indeed a medical emergency taking all circumstances into consideration." ECF. No. 63 at 5. He further argues that the "if necessary" language at the end of J-005 implies that the entire policy is discretionary. *Id.* at 7.

I will not speculate about the acts Officer Shoults may or may not have engaged in when he was allegedly informed of Mr. Zinselmeier's medical emergency. My assessment of whether Officer Shoults's duty under J-005 was discretionary or ministerial is based on the *specific factual allegations* made in Ms. Zinselmeier's Complaint. " 'The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity.' " *Williams*, 186 F.4th at 513 (quoting *K.B. v. Waddle*, 764 F.3d 821, 825 (8th Cir. 2014)). To be considered discretionary, an alleged policy must "*inherently encompass*[] some degree of discretion in how [it is] carried out." *Id.* (citation omitted) (emphasis added). "[T]he central inquiry is whether there is any room whatsoever for variation in ***when and how*** a particular task can be done. If so, that task – by definition – is not ministerial." *Headley*, 178 F.4th at 434 (citing *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. banc 2019)) (emphasis in original). A ministerial act is "to be performed upon a given state of facts in a

prescribed manner…without regard to the public official's judgment or opinion[.]" *Id.* A plaintiff's "mere labeling of the duties as ministerial does not make them so." *Williams*, 186 F.4th at 513.

Here, I find the allegations in Ms. Zinselmeier's Complaint establish that J-005 is distinct from the policies at issue in *Williams* and *Headley*. First, there was no room for variation as to *when* Officer Shoults was required to report Mr. Zinselmeier's alleged medical emergency. Ms. Zinselmeier alleges J-005 requires staff to *immediately* notify medical staff and the shift supervisor when they observe or are informed of a detainee experiencing a medical emergency. The department policy that was deemed to be discretionary in *Williams* prescribed "irregular, periodic [cell] checks, with no fewer than 1 check in a 30 minute window." *Williams*, 186 F.4th at 513. The court in *Williams* noted the cell checks could be completed through "verbal or visual" contact and "could also occur more frequently should a correctional officer wish." *Id.* Ms. Zinselmeier alleges J-005 contains an immediate notification requirement. Nowhere in Ms. Zinselmeier's Complaint does she allege J-005 requires correctional staff to take the time needed to evaluate the credibility of the informant or assess the information provided. As it is alleged, simply being "informed" of a medical emergency is sufficient to trigger the immediate notification requirement in J-005.

Second, there is no room for variation as to *how* correctional staff members are to carry out J-005. In *Headley*, the court held that the cell-check policy at issue did not “dictate one manner ‘how’ the officer must conduct the check, allowing discretion and variation.” *Headley*, 178 F.4th at 435. “Tasks that can be completed partially or through different methods are not ministerial.” *Id.* (quoting *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 473 (Mo. banc 2023)). “In fact, [the deceased’s] parents allege in their complaint that officers are required to ‘properly assess, evaluate, and manage inmates with physical and mental health conditions,’ and report ‘inmates who are acting suspiciously, erratically, or suicidal.’ ” *Id.* The court determined that “these requirements highlight the discretionary nature of the checks.” *Id.* The allegations in *Headley* established that “officers [were] required to use judgment in doing checks[.]” *Id.* There are no such allegations in Ms. Zinselmeier’s Complaint.

Officer Shoults argues that there is discretion “in weighing whether the inmate who reports something to an officer barks at the moon every night, versus one who is reasonably trustworthy.” ECF. No. 63 at 7. He also argues that officers must “evaluate and determine” whether the information provided “amounts to a medical emergency” and “evaluate whether an inmate is accurately describing observations or symptoms of another inmate.” *Id.* But the words “evaluate,” “weigh,” “determine,” and “assess” do not appear in J-005 as it is

alleged in Ms. Zinselmeier's Complaint. J-005 is devoid of any language requiring correctional staff to make a determination or decision of any kind before immediately notifying the enumerated authorities. Ms. Zinselmeier does not allege that correctional staff have a duty pursuant to J-005 to evaluate the truth of the reported medical emergency, make their own determination of whether a medical emergency exists, or conduct their own evaluation of the detainee allegedly experiencing the emergency. Pursuant to J-005, correctional staff "*must* immediately notify medical staff, the shift supervisor, *and* summon emergency medical services (EMS/ambulance) if necessary." ECF No. 1 at ¶ 162 (emphasis added). If anything, J-005 mandates that an evaluation of the credibility of the report or the detainee's condition is up to medical staff, the shift supervisor, or EMS. A correctional staff member's only duty is to immediately notify these higher authorities and summon EMS if necessary.

An immediate notification requirement is a duty "of such a routine and mundane nature that it is likely to be delegated to subordinate officials." *Headley*, 178 F.4th at 434. Because J-005 is not alleged to require any judgment prior to immediately notifying the enumerated authorities, it is ministerial in nature. *Cf. Morales*, 679 S.W.3d at 473 (finding no ministerial duty where employee "had to use discretion to determine if [the deceased] needed additional care, and, if so, what care to be administered"); *State ex rel. Kansas City Power & Light Co. v.*

*McBeth*, 322 S.W.3d 525, 531-32 (Mo. 2010) (finding no ministerial duty to value and assess property according to a company's reported costs where county assessors could use various methods and factors to assess "the property at a given percentage of its 'true value in money' "). The "if necessary" language at the end of J-005 does not change the nature of the duty. Even so, the requirement to immediately notify medical staff and the shift supervisor is not subject to the "if necessary" condition.

As I indicated in my August 5th Order, I find the Eighth Circuit's decision in *Letterman v. Does*, 859 F.3d 1120 (8th Cir. 2017), is controlling in this case. In *Letterman*, the Eighth Circuit held that the jail's close-observation policy was ministerial and not discretionary. *Id.* at 1127. "The close-observation policy requires officers to check on the inmate every fifteen minutes and report as a medical emergency any instance when they cannot observe movement or obtain a verbal response or when it appears that the inmate is not breathing." *Id.* at 1126. The court determined that "[t]he duty to report a medical emergency when one of these criteria is met is mandatory and does not depend on the officer's assessment of whether a medical emergency actually exists." *Id.* In the same way, J-005's immediate notification requirement does not depend on the officer's assessment of whether a medical emergency actually exists. Pursuant to J-005, an officer being informed of a medical emergency triggers the mandatory reporting requirement.

The court in *Letterman* held, "[e]ven if discretion is involved in determining whether the inmate has manifested the necessary response, *it does not follow that the act of reporting a medical emergency when a response is not received is discretionary.*" *Id.* (emphasis added). Even if I accept Officer Shoults's argument that an officer must use discretion to determine whether, for example, a headache amounts to a medical emergency, it does not follow that the duty to immediately report a medical emergency when he is informed of one is discretionary. *See id.* ("[E]ven if we accept Defendants' contention that executing the close-observation policy requires discretion in determining what constitutes movement or response, it does not follow that the close-observation policy is discretionary for purposes of official immunity."). In other words, if a detainee informs an officer that one of his fellow detainees is experiencing an unspecified "medical emergency," the officer is required to immediately report it under J-005.

Finally, the Supreme Court of Missouri has specifically stated that one of the relevant factors in finding that a policy is ministerial or discretionary is "the consequences of withholding immunity." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006). Under Missouri law, police officers are entitled to official immunity when driving in response to an emergency situation. *See, e.g.*, *id.*; *Southers v. City of Farmington*, 263 S.W.3d 603, 622 (Mo. 2008). "Imposing liability upon the officer in these cases might delay responses to emergency calls,

thereby adversely affecting officers or citizens in need of emergency assistance." *Davis*, 193 S.W.3d at 763. In this case, imposing liability upon correctional staff who fail to immediately report a medical emergency might *prevent delays* in responding to detainees who require emergency assistance. Ms. Zinselmeier alleges that "[m]ultiple detainees" informed Officer Shoults "of Mr. Zinselmeier's dire medical condition, that he fell out of bed, couldn't walk and was also now unresponsive." ECF. No. 1 at ¶ 76. She alleges Officer Shoults "did nothing to escalate, provide, seek, or obtain care for Mr. Zinselmeier." *Id.* at ¶ 79. She alleges that nearly six hours passed between the time Officer Shoults was informed of Mr. Zinselmeier's condition and when EMS was called. *Id.* at ¶¶ 75, 89. I find the third factor weighs in favor of correctional staff having a ministerial duty under J-005 to immediately notify the enumerated authorities when they observe or are informed of a detainee experiencing a medical emergency.

As a result, I need not address the parties' arguments on whether the "bad faith or malice" exception to official immunity applies to Officer Shoults. I find that Ms. Zinselmeier pleads sufficiently plausible factual allegations establishing that Officer Shoults failed to perform a ministerial duty under the alleged jail policy, J-005. Officer Shoults's motion for reconsideration is denied.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Brandon Shoults's Motion for Reconsideration [62] is **DENIED.**

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 13th day of October, 2026.